UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In Re GRAND JURY SUBPOENA DUCES TECUM            Misc. Case No. 18-130 (KMW)
DATED MARCH 26, 2018 RETURNABLE APRIL
10, 2018.

-------------------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF KYMARA LONGRAN'S MOTION TO QUASH THE GRAND JURY SUBPONEA *DUCES TECUM*, INVOCATION OF HER FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION AND FOR AN EXTENSION OF THE TIME IN WHICH TO RESPOND TO THE GRAND JURY SUBPOENA

Movant Kymara Lonergan, by her attorney, respectfully submits this Memorandum of Law in support of her motion to: (i) quash the above-captioned Grand Jury subpoena pursuant to Fed.R.Crim.P 17(c)(2) because it is overbroad, unreasonable and oppressive; or (ii) quash the above-captioned Grand Jury subpoena pursuant to the Fifth Amendment of the United States Constitution; or (iii) issue an order granting immunity to Kymara Lonergan pursuant to 18 U.S.C. §§ 6002, 6003; and (iv) granting a 30-day extension of time to comply with the Grand Jury subpoena if this motion to quash is denied or immunity is conferred; and (v) grant such other and further relief that is just and appropriate.

I. THE GRAND JURY SUBPOENA DUCES TECUM SHOULD BE QUASHED AS OVERBROAD, UNREASONABLE AND OPPRESSIVE PURSUANT TO FED.R.CRIM.P. 17(C)(2) AND THE FOURTH AMENDMENT.

The movant is a former gallery owner and artistic agent for various artists including William Linich. Upon information and belief, the movant is in possession of tens of thousands of pages of records, images and documents that she has accumulated over the course of 30 years in

the art business. To comply with the instant subpoena as drafted, the movant will have to personally comb through these thousands of documents and images in search of "any and all" items related William Linich and then further determine if she knows whether "any and all" of these items were removed from one of the addresses where William Linich may have resided over the course of his entire life, which, upon information and belief, includes but may not be limited to California, New York City, Dutchess County, New York and Ulster County, New York.

In an effort to conduct the necessary due diligence in response to this subpoena, the items will have to be cataloged, copied, photographed and a privilege log created if a document is subject to an applicable legal privilege such as attorney-client or doctor-patient since the movant, in addition to being William Linich's agent, held a Durable Power of Attorney for health care decisions. For the reasons argued below, complying with this Grand Jury subpoena by April 10, 2018, is unreasonable, unduly burdensome, oppressive and violates the Fourth Amendment's privacy protection to be free from <u>unreasonable</u> searches and seizures by the government. *See United States v Meregildo*, 876 F. Supp.2d 445 (SDNY 2012) (among other limitations, a grand jury is without power to invade a legitimate privacy interest protected by the Fourth Amendment). Prior to filing this motion, both my client and I attempted to reach out to the government by telephone and email with no response whatsoever.

Fed.R.Crim.P. 17(c) empowers the district court, on motion, to quash or modify a subpoena "if compliance would be unreasonable or oppressive." Moreover, "A subpoena duces tecum may be so sweeping that it violates the Fourth Amendment's prohibition of unreasonable searches. . . If a subpoena *duces tecum* does constitute a violation of the Fourth Amendment, the courts may quash or modify it. To avoid such judicial action, the subpoena must be reasonable.

*In re Grand Jury Subpoena Duces Tecum Addressed to Provision Salesmen and Distributors Union, Local 627, AFL-CIO*, 203 F. Supp. 575, 577 (SDNY 1961). To satisfy the reasonableness test, the subpoena *duces tecum* may command only the production of things relevant to the investigation being pursued; the subpoena must specify the things to be produced with reasonable particularity; and the subpoena may order the production of records covering only a reasonable period of time. *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1084 (EDNY 1978); *United States v Yudong Zhu*, 13 CR. 761, 2014 WL 5366107, at *2 (SDNY Oct. 14, 2014) ("In order for a subpoena *duces tecum* to survive such analysis, it must 'clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.'").

In this case, the subpoena seeks "any and all" items removed by any person at any time from any of the places where William Linich lived over the course of his entire life. This demand as drafted includes any and all items removed by William Linich himself or any other third party, known or unknown to the movant. The subpoena does not specify the things to be produced with reasonable particularity and demands any and all items without any time frame specified which places the movant in the position of determining whether an item should be turned over at a risk of incurring an order of contempt. *See In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291(4th Cir. 1987) *rehearing denied* 844 F.2d 202 (Grand jury subpoenas *duces tecum*, which required production of videotapes containing lewd or lascivious displays of genitals or pubic area, did not provide videotape distributors with sufficiently clear guidelines for compliance; described categories did not refer to particular tapes; and videotape distributors would have to make judgment calls at risk of civil contempt). The subpoena also requests an unspecified number of documents, including emails, that are related to William Linich with no time frame limitation.

In *United States v Nachamie*, 91 F. Supp.2d 552, 564 (SDNY 2000), the District Court quashed a number of subpoenas, pursuant to Fed.R.Crim.P. 17, on the ground that "(1) they lack a specific time frame; and (2) the language 'All correspondence and other documents, including but not limited to documents reflecting, discussing, or relating' is overbroad and smacks of a fishing expedition."  The subpoena in this case also lacks a specific time frame and uses similar broad language seeking "any and all" items that was rejected by the court in *Nachamie*.  It has been held that subpoenas seeking "any and all" materials, without mention of specific admissible evidence, justify the inference that the party seeking the material is engaging a fishing expedition. *See United States v Mendinueta-Ibarro*, 956 F. Supp.2d 511, 513 (SDNY 2013).  The subpoena in seeking any and all items removed from Linich's home or homes at any time, fails to establish that the items sought are admissible, relevant and specifically identified. "A request is considered sufficiently specific where it states with reasonable particularity the subjects to which the documents relate and limits documents to a reasonable period of time." *United States v RW Professional Leasing Services Corp.*, 228 FRD 158, 164 (EDNY 2005).

The government should also not be permitted to use the Grand Jury's broad subpoena powers to avoid Fourth Amendment limitations and effectuate "an end run around probable cause and warrant requirements*." In re Grand Jury Subpoena Duces Tecum Dated May 9, 1990*, 741 F Supp. 1059, 1072 (SDNY 1990), *affd sub nom. In re Grand Jury,* 956 F.2d 1160 (2d Cir. 1992).

## II. THE GRAND JURY SUBPOENA DUCES TECUM SHOULD BE QUASHED UNLESS THE MOVANT IS CONFERRED IMMUNITY BECAUSE THE ACT OF PRODUCING THE REQUESTED ITEMS VIOLATES THE MOVANT'S FIFTH AMENDMENT RIGHT TO BE FREE FROM COMPELLED SELF-INCRIMINATION.

In response to this subpoena, the movant invokes her privilege against self-incrimination afforded by the Fifth Amendment to the federal constitution and moves to be relieved of compliance with the subpoena unless and until she is granted immunity from prosecution pursuant 18 U.S.C. §§ 6002(1) and 6003. The United States Supreme Court has recognized that the mere "act of producing evidence in response to a subpoena ... has communicative aspects of its own, wholly aside from the contents of the papers produced." *Fisher v. United States*, 425 U.S. 391, 410 (1976), *see also United States v. Doe*, 465 U.S. 605, 612 (1984) ("A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect.").

> The Fifth Amendment provides, in relevant part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. 5. "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 189, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). The Supreme Court has recognized that the privilege "has consistently been accorded a liberal construction," *Miranda v. Arizona*, 384 U.S. 436, 461, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and, in accordance with this principle, the Fifth Amendment privilege has been found to extend not only to answers that are directly incriminatory but also to those that, while not themselves inculpatory, "would furnish a link in the chain of evidence needed to prosecute the claimant," *Ohio v. Reiner*, 532 U.S. 17, 20, 121 S.Ct. 1252, 149 L.Ed.2d 158 (2001) (*per curiam*) (*quoting Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)).

*United States v Greenfield*, 831 F3d 106, 114 (2d Cir 2016).

The movant respectfully submits that complying with the instant subpoena may "tacitly concede[ ] the existence of the papers demanded and their possession or control by" the subpoena recipient and the subpoena recipient's "belief that the papers are those described in the subpoena." *Fisher*, 425 U.S. at 410. *See also United States v. Hubbell*, 530 U.S. 27, 120 (2000), holding that the subject of a subpoena cannot be compelled to create a "catalog of existing

documents" that is a "link in the chain" of evidence that might be used to her own prosecution because "That act, as well as a custodian's compelled testimony about whether he has produced everything demanded, may certainly communicate information about the documents' existence, custody, and authenticity. It is also well settled that compelled testimony communicating information that may lead to incriminating evidence is privileged even if the information itself is not inculpatory." *United States v Hubbell*, 530 U.S. at 28; *Curcio v. United States*, 354 U.S. 118, 125 (1957) ("The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena.").

Here, the government is seeking "any and all" items that have ever been removed from "home" which is a term that includes an unknown number of locations where William Linich may have resided over the course of his entire lifetime. Since this subpoena states that this is a criminal investigation into allegations of wire fraud in violation of 18 U.S.C. § 1343 and the movant does not know if she is a witness, subject or target of the investigation, she is well within her rights to invoke her Fifth Amendment privilege and refuse to comply with this subpoena unless and until she is provided with immunity pursuant to 18 U.S.C. §§ 6002 and 6003. *See In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999*, 191 F3d 173, 180 (2d Cir 1999) ("We further noted that should the district court determine that the production would prove incriminatory, 'the government could either by stipulation or by obtaining a grant of immunity pursuant to 18 U.S.C. §§ 6002-6003, immunize the act of production; such immunity would preserve the appellant's Fifth Amendment rights with respect to his conduct in producing

the documents, *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).' *Id*. at 988."); *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983*, 722 F2d 981, 988 (2d Cir 1983) ("should production itself be potentially incriminatory, the government could either by stipulation or by obtaining a grant of immunity pursuant to 18 U.S.C. §§ 6002-6003, immunize the act of production; such immunity would preserve the appellant's Fifth Amendment rights with respect to his conduct in producing the documents."). The subpoena also requests an unspecified number of documents, including emails, that are related to William Linich with no time frame limitation.

### III. THE MOVANT SHOULD BE GRANTED IMMUNITY PURSUANT TO 18 U.S.C. § 6002-6003 FOR HER UNCOUNSELED COMMUNICATIONS WITH SPECIAL AGENT MCKEOGH, FOR THE ACT OF PRODUCING THE SUBPOENAED MATERIALS AND ANY DERIVATIVE USE FROM THOSE COMMUNICTAIONS AND ACT OF PRODUCTION.

If the subpoena is not quashed pursuant to Fed.R.Crim.P. 17 as unreasonable and oppressive, the movant should be granted immunity from prosecution in light of the invocation of her Fifth Amendment privilege against self-incrimination.  Title 18 U.S.C. § 6002 to provides:

> Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to--
>
> (1) a court or grand jury of the United States,
>
> (2) an agency of the United States, or
>
> (3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
>
> and the person presiding over the proceeding communicates to the witness an order issued under this title, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness

in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C § 6002. Upon invocation of the privilege, the government may seek an order granting immunity when "(1) the testimony or other information from such individual may be necessary to the public interest; and (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination. 18 U.S.C. § 6003. Such a grant of immunity would also cover any of the uncounseled statements made by the movant to the special agent before he served the subpoena so that any prosecution for violating 18 U.S.C. § 1001 would be barred. *See United States v Berardelli*, 565 F.2d 24 (2d Cir. 1977) (held (1) testimony given under grant of immunity could not be used to prove earlier perjury before grand jury; (2) prosecution for making inconsistent declaration in testimony given under grant of immunity was barred by immunity statute); *United States v. Watkins*, 505 F.2d 545 (7th Cir. 1974) (held exception contained in this section for prosecutions for perjury refers to future perjury and future false statements rather than to previous acts so that immunity did protect defendant, who was ordered to testify under grant of use immunity, from prosecution for having previously given false testimony to federal and state law enforcement agencies); *United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973) (Phrase "giving a false statement," as used in this section providing that no compelled testimony may be used against a grand jury witness, who has been given use immunity, in any criminal case except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order, refers to false statement given in response to order compelling testimony; thus, use immunity did not fail to protect grand jury witness from prosecution for false statements based on an interview with a Federal Bureau of

Investigation agent prior to witness' grand jury appearance; witness' use immunity was coextensive with constitutional right against self-incrimination).

In this case, upon information and belief, Special Agent McKeogh, prior to serving the subpoena on the movant, questioned the movant at length without apprising her of *Miranda* warnings or letting her know he was about to serve a Grand Jury subpoena on her. Upon information and belief, shortly after the interview, the movant telephoned the special agent to clarify some of her answers and left him a message but she was unsuccessful in making direct contact with the special agent.

## IV. SHOULD THE MOVANT BE REQUIRED TO COMPLY WITH THE SUBPOENA, SHE SHOULD BE GRANTED UNTIL ON OR ABOUT MAY 30, 2018 TO DO SO.

As set forth herein, the subpoena as drafted will require the movant to search through over 30 years of documents, images and records to determine if anything in her possession is responsive to the subpoena. We estimate that there are tens of thousands of pages of documents that would have to be reviewed in dozens of boxes and an unknown number of related emails. Once located, those documents, records and images would have to be catalogued and photographed and reviewed for any legal privilege that might need to be asserted and a privilege log created for *in camera* review. The movant was William Linich's agent and held his healthcare power of attorney at one time. Some of the records may be subject to the attorney-client or doctor-patient privileges. Moreover, given the movant's current state of health (she is currently hospitalized and not expected to be released for another ten days) a person would have to be employed to assist the movant in the task of responding to the subpoena.

**V. THE COURT SHOULD GRANT ANY FUTHER RELIEF THAT IT DEEMS JUST AND APPROPRIATE INCLUDING BUT NOT LIMITED TO MODIFICATION OF THE SUBPOENA AS AUTHORIZED BY LAW**

CONCLUSION

Based upon the foregoing, the annexed declaration and the exhibits attached thereto, the Grand Jury subpoena dated March 26, 2018 should be quashed unless and until the government confers immunity upon the movant pursuant to 18 U.S.C. § 6002-6003 and in all events, the time in which to comply with the subpoena should be extended for approximately 30 days.

Dated: New York, New York
April 5, 2018

Respectfully submitted,

*/s/ Michael S. Pollok/*

Michael S. Pollok, Of Counsel
Kantor, Davidoff, Mandelker, Twomey, Gallanty
& Kokhba, P.C.
*Attorney for Kymara Lonergan*
415 Madison Avenue-16th Floor
New York, New York 10017
(212) 634-9121 (direct)
pollok@kantordavidoff.com